**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PINELLAS COUNTY, FLORIDA**

Case No. ______________________________

NATIONAL COUNCIL OF THE UNITED STATES, SOCIETY OF ST. VINCENT DE PAUL, INC., a Delaware nonprofit corporation,

and

WILLIAM CONDON, as President of the SOUTH PINELLAS DISTRICT COUNCIL OF THE SOCIETY OF ST. VINCENT DE PAUL,

Plaintiffs,

v.

VINCENTIAN CARES INC. (f/k/a Society of St. Vincent de Paul South Pinellas, Inc., f/k/a St. Vincent de Paul CARES Inc.) d/b/a ST. VINCENT DE PAUL CARES, SVDP CARES, or VINCENTIAN CARES, a Florida nonprofit corporation; VINCENTIAN HOUSING CORPORATION, INC., a Florida nonprofit corporation; VINCENTIAN PROPERTIES, INC., a Florida nonprofit corporation; VINCENTIAN LEGAL SERVICES INC., a Florida nonprofit corporation; SVDP CARES INC., a Florida nonprofit corporation; VINCENTIAN CARES FOUNDATION INC. (f/k/a Charlotte County Homeless Coalition Foundation, Inc., a/k/a SVdP CARES Foundation Inc.), a Florida nonprofit corporation; MICHAEL J. RAPOSA, individually; CHRIS YOUMANS, individually; MARK COOPER II, individually; and TOMAS YI, individually,

Defendants.
_______________________________________________/

**COMPLAINT**

The NATIONAL COUNCIL OF THE UNITED STATES, SOCIETY OF ST. VINCENT DE PAUL, INC., a Delaware nonprofit corporation, and WILLIAM CONDON, as President of the

SOUTH PINELLAS DISTRICT COUNCIL OF THE SOCIETY OF ST. VINCENT DE PAUL, by and through undersigned counsel, sue (1) VINCENTIAN CARES INC. (f/k/a Society of St. Vincent de Paul South Pinellas, Inc., f/k/a St. Vincent de Paul CARES Inc.) d/b/a ST. VINCENT DE PAUL CARES, SVDP CARES, or VINCENTIAN CARES, a Florida nonprofit corporation; (2) VINCENTIAN HOUSING CORPORATION, INC., a Florida nonprofit corporation; (3) VINCENTIAN PROPERTIES, INC., a Florida nonprofit corporation; (4) VINCENTIAN LEGAL SERVICES INC., a Florida nonprofit corporation; (5) SVDP CARES INC., a Florida nonprofit corporation; (6) VINCENTIAN CARES FOUNDATION INC. (f/k/a Charlotte County Homeless Coalition Foundation, Inc., a/k/a SVdP CARES Foundation Inc.), a Florida nonprofit corporation; (7) MICHAEL J. RAPOSA, individually; (8) CHRIS YOUMANS, individually; (9) MARK COOPER II, individually; and (10) TOMAS YI, individually, alleging as follows:

## INTRODUCTION

1. This case arises from a coordinated and clandestine plan by the executive leadership of a major Florida nonprofit to wrongfully strip its governing member of all authority, sever the organization from the international charitable society that oversees it, and seize control of its assets.

2. Instead of faithfully stewarding the mission of the Society of St. Vincent de Paul (the **"Society"**), Michael J. Raposa, Chris Youmans, Mark Cooper II, and Tomas Yi (together, the **"Individual Defendants"**) incorporated shell entities, orchestrated a rushed vote in violation of organizational and statutory notice requirements, and filed unauthorized corporate documents purporting to make fundamental changes to the corporate governance structure—changes designed to make themselves the masters of a corporation they were duty-bound to serve.

3. Plaintiffs bring this action to set aside the Individual Defendants' unauthorized acts; restore the South Pinellas District Council of the Society of St. Vincent de Paul as the rightful

member of the corporation and its subsidiaries; reinstate the asset stewardship protocols required of a district council within the Society; protect tens of millions of dollars in charitable assets from dissipation, misappropriation, and diversion; and preserve the governance structure that has guided the Society in its mission of service to the poor for nearly two centuries and by which all councils and "special works" entities agree to abide.

## THE PARTIES

4. Plaintiff, the NATIONAL COUNCIL OF THE UNITED STATES, SOCIETY OF ST. VINCENT DE PAUL, INC. (the **"National Council"**) is a Delaware nonprofit corporation headquartered in Maryland Heights, Missouri. The National Council is the Superior Council of the Society in the United States and exercises supervisory authority over all councils, conferences, and special works entities in the United States pursuant to The Rule of the Society of St. Vincent de Paul (**"The Rule"**).

5. The SOUTH PINELLAS DISTRICT COUNCIL OF THE SOCIETY OF ST. VINCENT DE PAUL (the **"District Council"**) is an association of South Pinellas County-based conference leaders that is affiliated with the National Council and operates in the Diocese of St. Petersburg, Florida.

6. Plaintiff, WILLIAM CONDON (**"Condon"**) is an individual residing in Florida who has served as the President of the District Council since 2023. Condon brings this action in his representative capacity as President of the District Council.

7. Defendant, VINCENTIAN CARES INC. (f/k/a Society of St. Vincent de Paul South Pinellas, Inc., f/k/a St. Vincent de Paul CARES Inc.) d/b/a ST. VINCENT DE PAUL CARES, SVDP CARES, or VINCENTIAN CARES (the **"Corporation"** or **"Original Entity"**) is a Florida nonprofit corporation headquartered in St. Petersburg, Florida. The Corporation bears

FL Doc. No. N09363 and Employer Identification Number (**"EIN"**) 59-2380770. At all relevant times, the Corporation's principal address has been 384 15th Street North, St. Petersburg, Florida 33705.

8. Defendant, VINCENTIAN HOUSING CORPORATION, INC. (**"Vincentian Housing"**) is a Florida nonprofit corporation headquartered in St. Petersburg, Florida. Vincentian Housing is a subsidiary of the Corporation.

9. Defendant, VINCENTIAN PROPERTIES, INC. (**"Vincentian Properties"**) is a Florida nonprofit corporation headquartered in St. Petersburg, Florida. Vincentian Properties is a subsidiary of the Corporation.

10. Defendant, VINCENTIAN LEGAL SERVICES INC. (**"Vincentian Legal"**) is a Florida nonprofit corporation headquartered in St. Petersburg, Florida. Vincentian Legal is a subsidiary of the Corporation.

11. Defendant, SVDP CARES INC. is a Florida nonprofit corporation headquartered in St. Petersburg, Florida.

12. Defendant, VINCENTIAN CARES FOUNDATION INC. (f/k/a Charlotte County Homeless Coalition Foundation, Inc., a/k/a SVdP CARES Foundation Inc.) (the **"Foundation"**) is a Florida nonprofit corporation headquartered in St. Petersburg, Florida.

13. Defendant, MICHAEL J. RAPOSA (**"Raposa"**) is an individual residing in Florida who has served as the Corporation's Chief Executive Officer (**"CEO"**) or Executive Director since 2011. Raposa is a full-time, salaried officer of the Corporation.

14. Defendant, CHRIS YOUMANS (**"Youmans"**) is an individual residing in Florida who has served on the Corporation's Board of Directors since 2011, typically as President thereof.

15. Defendant, MARK COOPER II (**"Cooper"**) is an individual residing in Florida

who has served as the Corporation's Chief of Staff since at least 2023. Cooper is a full-time, salaried officer of the Corporation.

16. Defendant, TOMAS YI (**"Yi"**) is an individual and attorney residing in Florida who helped incorporate several of the entities described herein and is Chief Legal Officer of the Corporation. Yi is a full-time, salaried officer of the Corporation.

**JURISDICTIONAL ALLEGATIONS**

17. This Court has jurisdiction over this matter pursuant to Article V, Section 5 of the Florida Constitution, Fla. Stat. § 26.012, and Fla. Stat. § 34.01, as this is an action, in part, for damages that exceed $50,000, exclusive of interest, costs, and attorneys' fees.

18. This Court has personal jurisdiction over the Corporation and all other corporate defendants because they are Florida nonprofit corporations with principal offices in Pinellas County, Florida.

19. This Court has personal jurisdiction over the Individual Defendants pursuant to Fla. Stat. § 48.193, as each is domiciled in and maintains a principal place of business within this State.

20. Venue is proper in Pinellas County pursuant to Fla. Stat. § 47.011 because the Corporation's principal place of business is located in St. Petersburg, Florida, within this County, and the acts giving rise to this action occurred in this County.

21. This Court has jurisdiction to grant declaratory relief pursuant to Fla. Stat. §§ 86.011 and 86.021, as there exists a bona fide, actual, present, and practical need for the declarations sought herein.

22. This action is brought, in part, pursuant to Fla. Stat. § 617.0607, to challenge the District Council's removal as the sole member of the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal.

23. This action is brought, in part, pursuant to Fla. Stat. § 617.0304, which authorizes a member of a nonprofit corporation to commence a proceeding to enjoin an unauthorized corporate act.

24. This action is brought, in part, pursuant to the Federal Trademark Act of 1946, as amended, 15 U.S.C. §§ 1051 et seq. (the **"Lanham Act"**) for trademark infringement, trademark counterfeiting, and unfair competition.

## FACTUAL ALLEGATIONS

### The Society's Governance Structure

25. The Society is an international Catholic charitable organization founded in Paris in 1833, dedicated to serving the poor and vulnerable.

26. The Society is comprised of "Vincentians", who are members of the Society. The Society is organized as follows: the Council General, based in Paris, France, is the supreme governing body. Below the Council General are national Superior Councils, including the National Council of the United States.

27. Below the National Council are diocesan councils, followed by district councils (like the District Council), local conferences, and special works entities.

28. The Rule is the foundational governing document that applies to and is the "paramount authority" for all units of the Society worldwide. It establishes the governance structure, the relationship between councils at each level, and the obligations of each unit. Part III of The Rule houses the statutes of the National Council, which were approved by the Society's Council General.

29. Pursuant to Part III, Statute 20 of The Rule, a special works entity must be governed in consultation with the higher council, must maintain a board with a majority of active Society members, must report to the incorporating council, and must comply with The Rule's governance

requirements.

30. Pursuant to Part III, Statute 23 of The Rule, councils and conferences must maintain accurate records and submit an annual report to the next higher council on forms provided by the National Council's leadership.

31. Pursuant to Part III, Statute 24 of The Rule, the authority to manage the Society's assets is vested exclusively with councils, which may only delegate this authority in accordance with The Rule and the National Council's own governing documents. Under The Rule, a council or conference may use funds only for Vincentian purposes in furtherance of the Society and its mission, and such funds may not be used for any other charitable purpose.

32. Pursuant to Part III of The Rule, "[s]hould any [b]ylaw, rule or regulation adopted by [a] [c]onference or [c]ouncil conflict with the Rule and regulations of [the Society] . . . such [b]ylaws, rules or regulations should be void and of no [effect]."

33. The National Council approved and promulgated model bylaws for all conferences and councils in the United States.

34. The National Council required that every council and conference adopt and abide by the applicable set of model bylaws.

35. The model bylaws for special works entities provide that "[i]f any changes [are] made to these Special Bylaws (other than name and location), then they must be approved by your immediate Upper Council President or your region's National Vice President"—*i.e.*, be approved by the National Council.

36. Similarly, the model bylaws for district councils provide that "[i]f any changes [are] made to the Bylaws (other than name and location), then they must be approved by the Region's National Vice President."

## The National Council's Trademarks

37. The National Council is the owner of trademarks, service marks, and trade names used to identify the Society and its charitable services throughout the United States, including the marks "Society of St. Vincent de Paul", "St. Vincent de Paul", and "SVDP", together with associated logos and design marks (collectively, the **"Marks"**).

38. The National Council holds, among others, the following valid and subsisting federal trademark registrations on the Principal Register of the United States Patent and Trademark Office:

- U.S. Registration No. 2,277,318 (SOCIETY OF ST. VINCENT DE PAUL U.S.A. design mark; registered September 14, 1999; incontestable);

- U.S. Registration No. 4,574,794 (SOCIETY OF ST. VINCENT DE PAUL word mark; registered July 29, 2014; incontestable);

- U.S. Registration No. 5,837,094 (ST. VINNIE'S word mark; registered August 20, 2019); and

- U.S. Registration No. 8,432,609 (SVDP word mark; registered September 15, 2026).

39. The National Council licenses the Marks to its duly authorized member councils and conferences in good standing. Such licenses are granted through resolutions adopted by the National Council (resolutions agreed to by member councils and conferences), are conditioned upon the licensee's compliance with The Rule and the Society's standards and governance requirements, and are terminable at will.

40. All use of the Marks by a licensee inures to the sole and exclusive benefit of the National Council, and no licensee acquires any ownership interest in the Marks.

41. No licensee has authority to sublicense the Marks to any third party without the National Council's express, prior written consent.

**The District Council and the Corporation**

42. In 1985, the District Council comprised members of the Society's parish conferences in South Pinellas County and was governed by the presidents thereof.

43. As set forth in The Rule, the District Council, upon being "instituted", became a full member of the Society bound to follow the procedures established by the National Council.

44. As a member of the Society, the District Council is a Vincentian body.

45. From its founding, the District Council operated as a duly authorized member council of the Society and was licensed to use the Marks in connection with its charitable services in and around Pinellas County, Florida.

46. In May 1985, the District Council incorporated the Corporation and named it the "Society of St. Vincent de Paul South Pinellas, Inc."

47. The Corporation's Articles of Incorporation identified its purposes as follows:

> To animate and coordinate the work of the St. Vincent de Paul parish conferences within its geographical jurisdiction.
>
> To undertake charitable works and special projects which are beyond the capacity of an individual parish conference or which have community-wide implications.
>
> To initiate and strive to bring about the establishment of new conferences and the revival of inactive conferences.

48. The Corporation's Articles of Incorporation further provided that "[a]ll presidents of [the] St. Vincent de Paul Parish Conferences located in South Pinellas County, Florida, and

presidents of the District Councils [sic] special projects shall constitute the membership of [the] [C]orporation."

49. The Corporation's bylaws mirrored this membership framework.

50. The Corporation operated a special works program in South Pinellas County, consisting of housing initiatives, food distribution initiatives, the operation of thrift stores, and the provision of veteran services.

51. The Corporation was licensed to use the Society's Marks to promote and market each of its special works initiatives, so long as it met all terms and conditions of the license.

**The Proliferation of the Special Works Program**

52. In 2011, the Corporation hired Raposa as CEO to manage the special works program.

53. In 2014, the Corporation received recognition from the Internal Revenue Service of its federal tax-exempt status under Section 501(c)(3).

54. In 2017, Raposa incorporated Vincentian Housing and Vincentian Properties to manage specific aspects of the special works program.

55. In or about 2021, the Corporation adopted a set of bylaws that approximated the model bylaws the National Council had approved for special works entities (the **"Bylaws"**).

56. The Bylaws provided that "[t]he sole Member of the Corporation shall be the [District Council]."

57. The Bylaws further reserved to the District Council, *inter alia*, the power to approve amendments to the Bylaws.

58. In 2023, Yi incorporated Vincentian Legal to manage yet another specific aspect of the special works program.

59. Vincentian Housing, Vincentian Properties, and Vincentian Legal also adopted sets

of bylaws that approximated the model bylaws the National Council had approved for special works entities, including the provision that the sole Member of each entity shall be the District Council.

60. In 2024, non-party Charlotte County Homeless Coalition, Inc. merged with the Corporation.

61. The Corporation's special works program—operating under the mark or brand "SVdP CARES" and with Raposa at the helm of Vincentian Housing, Vincentian Properties, and Vincentian Legal—eventually expanded beyond South Pinellas County and now serves twenty-two counties across Florida.

62. In or about March 2025, Raposa communicated to the National Council his intention to expand the Corporation's special works program to Puerto Rico.

63. Up to that point, the National Council had been unaware of the true and full extent of the Corporation's incorporation and expansion activities. Upon learning of these activities, the National Council asked Raposa for more information about the special works program, its prior expansions, and its future expansion plans. Indeed, the Corporation's rapid expansion beyond South Pinellas County and proposed expansion not just outside of Florida but also overseas posed novel governance challenges for the Society, necessitating clearer communication between the Corporation and the National Council to facilitate the Corporation's ongoing operations within the Society.

64. However, faced with increasing pressure from the National Council for transparency and accountability regarding the Corporation's activities, Raposa set in motion a plan to divest the National Council of oversight and control over the Corporation, including its assets.

65. To disenfranchise the National Council, Raposa and the other Individual

Defendants would need the Corporation to remove the District Council—the Societal bridge between the Corporation and the National Council—from any involvement in and control over the Corporation and its subsidiaries.

66. Over the next several months, through a series of unauthorized and clandestine corporate acts, and breaches or violations of the duties identified below, Raposa—aided by the other Individual Defendants—did exactly that.

**<u>The Plan to Seize Control of the Corporation</u>**

67. On April 8, 2025, Yi first incorporated Defendant, SVdP CARES Inc. (FL Doc. No. N25000004548), listing, in relevant part, Youmans as President, Raposa as CEO, and Cooper as Chief of Staff. The entity had the same principal address as the Corporation.

68. On April 21, 2025, Yi next incorporated non-party St. Vincent de Paul CARES Inc. (FL Doc. No. N25000005049) (hereafter, the **"New Entity"**), with the same officers and address as SVdP CARES Inc.

69. On June 27, 2025, Youmans caused the New Entity to be renamed "Society of SVdP South Pinellas Inc."

70. Around the same time, and on the heels of the Corporation's merger with non-party Charlotte County Homeless Coalition, Inc., Yi attempted to cause that entity's foundation, Charlotte County Homeless Coalition Foundation, Inc. (FL Doc. No. N08000005816), to be renamed SVdP CARES Foundation Inc. According to public records, in or around July 2025, Yi's attempt failed due to an error on the form he submitted to the Florida Division of Corporations: Yi submitted a Florida profit corporation form rather than the required nonprofit corporation form. Eventually, Yi succeeded in renaming it "Vincentian CARES Foundation Inc." (referenced herein as the **"Foundation"**).

71. According to the Corporation's website, the Foundation is responsible for managing

and investing the portfolio of assets from non-governmental funding to distribute and support community impact "through the entities of the organization", to wit, Vincentian Housing, Vincentian Properties, and Vincentian Legal.

72. On August 27, 2025, Youmans caused the Corporation to be renamed "St. Vincent de Paul CARES Inc." Simultaneously, Cooper caused an Authorization for Release of Name to be filed on behalf of the Corporation, authorizing and requesting that the Florida Division of Corporations release the name "Society of St. Vincent de Paul South Pinellas, Inc." for immediate use. The Corporation did so even though it did not own that trade name but was using the term "Society of St. Vincent de Paul" pursuant to a license from the National Council.

73. The Authorization for Release of Name epitomized the special works program's rejection of its affiliation with the Society and was the first step in a gradual migration toward "SVdP CARES" branding for the Corporation.

74. Both the National and District Councils were unaware of this incorporation and renaming activity by the Individual Defendants.

75. In August 2025, Raposa approached members of the District Council to introduce the idea of separating the District Council from the Corporation.

76. On September 10, 2025, Raposa and other leaders of the special works program met with the District Council and proposed that the District Council (1) remove itself as the sole Member of the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal and (2) adopt a new set of bylaws for the District Council (together, the **"Proposal"**).

77. On September 24, 2025, Raposa, Yi, and other leaders of the special works program circulated the proposed new set of District Council bylaws to the District Council.

78. The proposed bylaws were given to the District Council just one day before it was

scheduled to meet and vote on the Proposal. Yet upon information and belief, under the District Council's governing bylaws at the time, any proposed amendment to the District Council's bylaws required 30 days' written notice.

79. Nevertheless, on September 25, 2025, at a duly held District Council meeting, acting under intense pressure from the leaders of the special works program and with inadequate (and, indeed, a mere 24 hours') notice under its governing bylaws at the time, the District Council adopted resolutions that purported, in relevant part, to (1) remove the District Council as sole Member of the Corporation, (2) designate the Corporation's Board of Directors as its sole Member, and (3) adopt new District Council bylaws (hereafter, the **"2025 District Council Bylaws"**).

80. In October 2025, the District Council adopted identical resolutions purporting to remove the District Council as sole Member of Vincentian Housing, Vincentian Properties, and Vincentian Legal.

81. Yi drafted the resolutions referenced in paragraphs 79 and 80.

82. Upon information and belief, Yi also drafted the 2025 District Council Bylaws.

83. The National Council did not approve the Proposal, the resolutions referenced in paragraphs 79 and 80, or the 2025 District Council Bylaws.

84. On October 29, 2025, Cooper caused the New Entity to be renamed "Society of St. Vincent de Paul South Pinellas Inc."—effectively stripping the Corporation of its original name and transferring that name to an entity that was, by all accounts, unaffiliated with the special works program and its "SVdP CARES" branding.

85. Also on October 29, 2025, District Council officers—including Condon—were relocated from the Original Entity and instead installed as officers of the New Entity, apparently to house the District Council in a substitute entity while the Individual Defendants seized and retained

control of the Corporation and, critically, its assets under the Corporation's new branding.

86. Upon information and belief, the New Entity lacks both an EIN and Section 501(c)(3) tax status.

87. On November 13, 2025, Cooper caused Articles of Amendment to be filed for the Corporation, purporting to amend the Corporation's Articles of Incorporation to provide that the sole Member of the Corporation shall be its Board of Directors, a board that was controlled by Raposa and the Individual Defendants.

88. Finally, on July 10, 2026, Youmans caused the Corporation to be renamed "Vincentian CARES Inc.", dropping all explicit identification with the Society while consolidating its purported control over the Society's assets.

89. By impermissibly severing its affiliation with the District Council, the Corporation also extinguished or forfeited the only chain of authorization through which it was permitted to use the Marks.

90. Despite having no license or other authorization from the National Council, the Corporation, alongside the Foundation, has continued, and continues as of the date of this Complaint, to use the Marks, or variations of the Marks, in commerce, including but not limited to:

a) operating under the trade names "St. Vincent de Paul CARES" and "SVdP CARES";

b) displaying the Society's name, logos, and SVDP-formative marks on its website (svdpsp.org), annual reports, fundraising materials, social media accounts, and other public-facing documents and promotional or marketing materials, including the below designations that incorporate elements of the Marks;

c) soliciting and accepting charitable donations under the Marks from donors, foundations, and government agencies throughout the State of Florida and across state lines;

d) applying for and receiving government grants under the Marks, including grants funded by the U.S. Department of Housing and Urban Development and the U.S. Department of Veterans Affairs; and

e) publishing its SVdP CARES 2026–2029 Strategic Plan and annual reports under the Marks.

91. Upon information and belief, on September 26, 2025, the Corporation even went so far as to submit an application to the United States Patent and Trademark Office seeking federal registration of the "SVdP CARES" designation before it eventually acceded to the National Council's demands that it withdraw the application with prejudice.

92. Defendant, SVdP CARES Inc. is also not authorized by the National Council to use the Marks.

93. According to the Corporation's annual report for the fiscal year ending September 30, 2025, the Corporation reported total revenue of approximately $68.7 million, of which approximately $56.9 million consisted of government grants.

94. Without the District Council as its sole Member, the Corporation's leadership is ostensibly free to enter into contracts, dispose of assets, expand into new territories, and incur liabilities without any oversight or check from the Society, even if such activities are inconsistent with The Rule and do not benefit the Society or its mission.

**<u>Corrective Actions by the National and District Councils</u>**

95. In or about November 2025, the National Council advised the Corporation in writing that the Corporation was not authorized to use the Marks and that the National Council did not consent to such use. In the letter, the National Council also raised concerns about the Corporation's non-

compliance with The Rule and other Society regulations.

96. The Corporation has continued to use the Marks and operate in derogation of The Rule and other Society regulations, over the National Council's objection.

97. On March 20, 2026, the Corporation's Board of Directors voted to request that the District Council return as sole Member of the Corporation.

98. On March 26, 2026, the District Council adopted a conditional resolution to reinstate itself as sole Member of the Corporation.

99. Notwithstanding the vote by the Corporation's Board of Directors and the conditional resolution adopted by the District Council, the Corporation and the District Council have not executed a mutually agreeable memorandum of understanding formalizing the District Council's reinstatement as the sole Member of the Corporation.

100. On June 30, 2026, pursuant to a memorandum of understanding between the National and District Councils (the **"Council MOU"**), the District Council adopted a rescission resolution that: (1) rescinded the September 25, 2025, resolutions in their entirety; (2) reinstated the District Council as sole Member of the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal; (3) disclaimed any delegation of authority to the Corporation's Board of Directors to act as the Member; (4) re-adopted prior bylaws for the Corporation, with certain amendments to be approved by the National Council; and (5) removed Raposa as registered agent for the Corporation, appointing Condon in his place.

101. On July 8, 2026, the District Council sent a letter to the Corporation's leadership asking that it recognize the District Council as the rightful sole Member of the Corporation at its upcoming Board meeting.

102. However, the Corporation's leadership has refused to comply with the June 30, 2026,

rescission resolution or otherwise recognize the District Council as its sole Member, thereby necessitating the institution of this action.

103. Plaintiffs have retained the law firm of Nason, Yeager, Gerson, Harris & Fumero, P.A. to represent them in this matter and are obligated to pay it a reasonable fee for its services.

**COUNT I**
**UNLAWFUL TERMINATION OF MEMBERSHIP (FLA. STAT. § 617.0607)**
**(Plaintiffs Against the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal)**

104. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 103 as though fully set forth herein.

105. Before September 25, 2025, the District Council was the sole Member of the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal within the meaning of Fla. Stat. § 617.0601.

106. Under intense pressure from the leaders of the special works program, the District Council adopted resolutions purporting to remove itself as the sole Member of the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal and to designate the Corporation's Board of Directors as the sole Member thereof.

107. Pursuant to Fla. Stat. § 617.0607, membership in a corporation may not be terminated or suspended except pursuant to a procedure that is fair and reasonable and is carried out in good faith.

108. Upon information and belief, the District Council's governing bylaws at the time required at least 30 days' written notice of proposed bylaw amendments. The proposed Corporation resolution and new District Council bylaws were circulated just one day before the September 25, 2025, vote, in material noncompliance with this requirement.

109. The approved model bylaws for special works entities and for district councils—which the Corporation and District Council were required to adopt—provided that any changes other

than name and location must be approved by the immediate Upper Council President or the region's National Vice President. No such approval was sought or obtained.

110. The Rule, which is incorporated by reference into the Corporation's and District Council's bylaws, mandates that the authority to reorganize or change the governance structure of a special works entity be exercised in consultation with the higher council. The National Council was not consulted.

111. Because the resolutions did not comply with the procedures required by Fla. Stat. § 617.0607, the National Council's procedures, or The Rule, the purported termination of the District Council's membership in the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal is void and of no effect, and the District Council's membership was never validly terminated.

112. The November 13, 2025, Articles of Amendment—which purported to amend the Corporation's Articles of Incorporation to designate the Board of Directors as sole Member—were filed in reliance upon and in furtherance of the void resolutions and are likewise void and of no effect.

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment:

(a) declaring, pursuant to Fla. Stat. §§ 86.011 and 86.021, that the resolutions purporting to remove the District Council as sole Member of the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal are void and of no effect;

(b) declaring that the 2025 District Council Bylaws are void and of no effect;

(c) declaring that the November 13, 2025, Articles of Amendment are void and of no effect;

(d) declaring that the District Council is, and at all times since September 25, 2025, has remained, the sole Member of the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal;

(e) declaring that any further corporate acts taken in reliance upon the void resolutions are without authority and of no effect;

(f) entering an award of costs in favor of Plaintiffs; and

(g) granting such other and further relief as the Court deems just and proper.

**COUNT II**
**UNAUTHORIZED CORPORATE ACTS (FLA. STAT. § 617.0304)**
**(By Condon Against the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal)**

113. Condon re-alleges and incorporates by reference paragraphs 1 through 103 as though fully set forth herein.

114. Fla. Stat. § 617.0304 authorizes a member of a nonprofit corporation to commence a proceeding to enjoin unauthorized corporate acts.

115. Condon brings this action in his representative capacity as President of the District Council, the sole Member of the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal.

116. The Individual Defendants caused the Corporation and its subsidiaries to take corporate actions—including the renaming and restructuring of multiple entities, the removal of the District Council as sole Member, and the filing of Articles of Amendment for the Corporation—without proper authorization.

117. Since at least September 25, 2025, the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal have operated without their sole Member, free from any oversight or accountability to the Society.

118. In the absence of any governing authority authorized to approve expenditures, contracts, or asset transfers, the Corporation's leadership has had unfettered discretion over tens of millions of dollars in charitable assets, in violation of the provision of The Rule that the authority to manage the Society's assets is vested exclusively with councils.

119. Unless enjoined by this Court, the Corporation, Vincentian Housing, Vincentian

Properties, and Vincentian Legal, through the Individual Defendants, will continue to exercise unauthorized control over Society assets, enter into contracts, dispose of assets, expand operations, and incur liabilities without oversight from the District Council, to the irreparable injury of the District Council and the charitable mission of the Society.

120. The District Council has no adequate remedy at law because the harm caused by these unauthorized acts is ongoing and cannot be fully compensated by monetary damages.

121. The incorporation, renaming, and operational conduct described herein establish a substantial likelihood of success on the merits.

122. The public interest will be served by restoring administration of the Society's assets and operations to its councils, including the National and District Councils, and by ensuring that the public has ongoing confidence in the Corporation's commitment to Vincentian values as codified in The Rule.

WHEREFORE, Condon respectfully requests that the Court enter an order:

(a) temporarily, preliminarily, and permanently enjoining the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal from taking any further corporate action through their leadership, including the Individual Defendants, inconsistent with the District Council's status as sole Member of these entities;

(b) temporarily and preliminarily enjoining the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal, through their leadership, including the Individual Defendants, from disposing of, encumbering, or transferring any assets thereof outside the ordinary course of business, including in defense of this action, pending resolution of this action;

(c) directing the Corporation, Vincentian Housing, Vincentian Properties, and Vincentian Legal to recognize the District Council as the sole Member thereof;

(d) entering an award of costs in favor of the District Council; and

(e) granting such other and further relief as the Court deems just and proper.

**COUNT III**
**FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))**
**(By the National Council Against the Corporation, the Foundation, and SVdP CARES Inc. (the "Infringing Entities"))**

123. The National Council re-alleges and incorporates by reference paragraphs 1 through 103 as though fully set forth herein.

124. The National Council is the owner of the federally registered Marks identified in paragraphs 37 and 38 above, which are valid, subsisting, and in full force and effect, and certain of which are incontestable pursuant to 15 U.S.C. § 1065.

125. By severing its affiliation with the District Council and the Society, the Corporation forfeited its license to use the Marks.

126. Despite having no license or other authorization from the National Council, the Corporation, alongside the Foundation and SVdP CARES Inc. (and, upon information and belief, to an extent that remains to be seen, the other corporate defendants), has continued and continues to use in commerce marks that are identical or confusingly similar to the National Council's registered Marks in connection with providing charitable goods and services, soliciting donations, and applying for government grants.

127. The Infringing Entities' unauthorized use of the Marks is likely to cause, and upon information and belief has already caused, confusion, mistake, and deception among the public—including donors, government grantors, volunteers, and the communities served—as to whether the Infringing Entities are affiliated with, authorized or endorsed by, or otherwise connected to the Society.

128. This likelihood of confusion is heightened because the charitable services provided by, at a minimum, the Corporation were, until September 25, 2025, provided pursuant to a license from the National Council such that those services became associated in the public's mind with the

Society.

129. Further, the Infringing Entities' unauthorized use of the Marks, and confusingly similar variations thereof, reproduces, counterfeits, copies, colorably imitates, and constitutes infringement of the Marks and has caused and will likely continue to cause, and indeed will inevitably cause, confusion and mistake in the minds of the purchasing public as to the source of the goods and services. As such, the Infringing Entities' unauthorized use of the Marks also constitutes trademark counterfeiting within the meaning of the Lanham Act.

130. The Infringing Entities' unauthorized use of the Marks has caused and will continue to cause irreparable injury to the National Council, including loss and diversion of charitable contributions, impairment of the goodwill associated with the Marks, and loss of quality control over the goods and services offered under the Marks.

131. Upon information and belief, the Infringing Entities' unauthorized use of the Marks has been willful and with the intention of trading on the goodwill associated with the Marks, making this an exceptional case.

132. The National Council has no adequate remedy at law.

WHEREFORE, the National Council respectfully requests that the Court:

(a) temporarily and preliminarily enjoin the Infringing Entities' unauthorized use of the Marks pending restoration of the District Council as sole Member of the Corporation or unless and until the Corporation, the Foundation, and SVdP CARES Inc. are operating under a valid trademark license from the National Council;

(b) permanently enjoin the Infringing Entities from using or seeking to register the Marks or any mark confusingly similar thereto, pursuant to 15 U.S.C. § 1116;

(c) enter an award of damages for the National Council, including statutory damages for the Infringing Entities' trademark counterfeiting, in an amount to be determined at trial, together with the Infringing Entities' profits attributable to their infringement, pursuant to 15 U.S.C. § 1117;

(d) enter an award for the National Council of its reasonable attorneys' fees and costs incurred

in connection with this count, pursuant to 15 U.S.C. § 1117; and

(e) grant such other and further relief as the Court deems just and proper.

**COUNT IV**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**
**(By the National Council Against the Infringing Entities)**

133. The National Council re-alleges and incorporates by reference paragraphs 1 through 103 as though fully set forth herein.

134. In addition to its federally registered Marks, the National Council owns common-law trademark rights in unregistered marks and trade names associated with the Society, including "St. Vincent de Paul," "SVDP" (as a trade name), and variants thereof, which have been used continuously in commerce for decades and have acquired distinctiveness and secondary meaning identifying the Society as the source of the charitable goods and services provided thereunder.

135. The Infringing Entities' (and, upon information and belief, to an extent that remains to be seen, the other corporate defendants') unauthorized use of the Marks, the trade names, and confusingly similar designations in connection with providing, marketing, and promoting charitable goods and services constitutes a false designation of origin and false representation that their goods and services originate from, are sponsored by, or are affiliated with the Society, in violation of 15 U.S.C. § 1125(a).

136. The Infringing Entities' conduct has caused and is likely to continue to cause confusion, mistake, and deception among the public as to the origin, sponsorship, endorsement, and affiliation of the Infringing Entities' charitable goods and services.

137. The Infringing Entities' conduct has caused and will continue to cause irreparable injury to the National Council, including impairment of the goodwill associated with the Marks and trade names, loss and diversion of charitable contributions, and loss of quality control.

138. Upon information and belief, the Infringing Entities' conduct has been willful and deliberate, making this an exceptional case.

139. The National Council has no adequate remedy at law.

WHEREFORE, the National Council respectfully requests that the Court:

(a) temporarily and preliminarily enjoin the Infringing Entities' unauthorized use of the Marks pending restoration of the District Council as sole Member of the Corporation or unless and until the Corporation, the Foundation, and SVdP CARES Inc. are operating under a valid trademark license from the National Council;

(b) permanently enjoin the Infringing Entities from using or seeking to register any mark, trade name, or designation confusingly similar to the National Council's Marks and trade names, pursuant to 15 U.S.C. § 1116;

(c) enter an award of damages for the National Council in an amount to be determined at trial, together with the Infringing Entities' profits attributable to their infringement, pursuant to 15 U.S.C. § 1117;

(d) enter an award for the National Council of treble damages and its reasonable attorneys' fees and costs, pursuant to 15 U.S.C. § 1117; and

(e) grant such other and further relief as the Court deems just and proper.

**<u>COUNT V</u>**
**BREACH OF FIDUCIARY DUTY**
**(By Plaintiffs Against Raposa, Youmans, Cooper, and Yi)**

140. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 103 as though fully set forth herein.

141. At all relevant times, Raposa, as CEO of the Corporation, owed fiduciary duties of care, loyalty, and good faith to the Corporation and its sole Member, the District Council.

142. At all relevant times, Youmans, as a director and President of the Board of Directors of the Corporation, owed fiduciary duties of care, loyalty, and good faith to the Corporation and its sole Member, the District Council.

143. At all relevant times, Cooper, as Chief of Staff and an officer of the Corporation, owed

fiduciary duties of care, loyalty, and good faith to the Corporation and its sole Member, the District Council.

144. At all relevant times, Yi, as Chief Legal Officer of the Corporation, owed fiduciary duties of care, loyalty, and good faith to the Corporation and its sole Member, the District Council.

145. The Individual Defendants breached their fiduciary duties by, among other things: (a) secretly incorporating multiple entities using the Society's name and goodwill without the knowledge or approval of the District Council or the National Council; (b) orchestrating and pressuring the District Council into adopting the resolutions on materially inadequate notice; (c) causing the Corporation and its subsidiaries to sever their affiliation with the District Council and the Society, depriving the sole Member of its governance rights; (d) filing unauthorized corporate documents, including the November 13, 2025, Articles of Amendment, to cement their control over the Corporation; (e) exercising unauthorized and unfettered control over tens of millions of dollars in charitable assets without oversight from the sole Member; and (f) causing the Infringing Entities to continue using the Marks without authorization, exposing them to trademark liability.

146. The Individual Defendants' breaches of fiduciary duty were willful, deliberate, and undertaken in bad faith for the purpose of consolidating their personal control over the Corporation and its assets.

147. As a direct and proximate result of the Individual Defendants' breaches of fiduciary duty, Plaintiffs have suffered damages, including the loss of governance rights, the impairment of the goodwill associated with the Marks, and the exposure of charitable assets to dissipation and mismanagement.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Raposa, Youmans, Cooper, and Yi, jointly and severally, for:

(a) compensatory damages in an amount to be determined at trial;

(b) disgorgement of any profits or compensation received by the Individual Defendants as a result of their breaches of fiduciary duty;

(c) costs in favor of Plaintiffs; and

(d) such other and further relief as this Court deems just and proper.

**COUNT VI**
**ACCOUNTING AND CONSTRUCTIVE TRUST**
**(Plaintiffs Against the Corporation, Vincentian Housing, Vincentian Properties, Vincentian Legal, the Foundation, and SVdP CARES Inc.)**

148. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 103 as though fully set forth herein.

149. From its incorporation in 1985 through September 25, 2025, the Corporation operated under the governance of the District Council and the National Council, and under the license of the Society's Marks.

150. During this period, the Corporation and its subsidiaries acquired real property, personal property, government grants, charitable donations, and other assets using the Society's name, goodwill, and Marks.

151. By virtue of the unauthorized acts described herein, the Individual Defendants caused the Corporation and its subsidiaries to sever their relationship with the District Council and the Society while retaining possession and control of the assets accumulated during the Corporation's decades-long affiliation with the Society.

152. The Corporation and its subsidiaries hold assets—including but not limited to real property, cash, investments, government grants, and charitable donations—that were acquired in whole or in substantial part through the use of the Society's Marks and the goodwill associated therewith, and through the Corporation's affiliated status with, and reputation within, the Society.

153. Equity and good conscience require that a constructive trust be imposed on the assets held by the Corporation, Vincentian Housing, Vincentian Properties, Vincentian Legal, the Foundation, and SVdP CARES Inc. that were acquired through or are traceable to their use of the Society's Marks, goodwill, reputation, and affiliated status.

154. Allowing the Corporation and its subsidiaries to retain these assets after having severed or attempted to sever their affiliation with the Society would result in unjust enrichment.

155. Plaintiffs are further entitled to a full and complete accounting of all assets, revenues, expenditures, transfers, and liabilities of the Corporation, Vincentian Housing, Vincentian Properties, Vincentian Legal, the Foundation, and SVdP CARES Inc. from January 1, 2017, to the present, so that the nature, extent, and disposition of the assets held by these entities may be ascertained and the constructive trust may be properly administered.

156. Given the period of time, number of companies involved, and quantity of transactions at issue, the transactions are sufficiently complicated such that an ordinary action demanding a fixed sum is impracticable and the remedy at law would be inadequate.

157. Upon information and belief, the Corporation and its subsidiaries have entered into contracts, incurred liabilities, and made transfers of assets over several years, without oversight from the District Council, and a full accounting is necessary to determine whether any such transactions were contrary to the interests of the Society and its charitable mission, or made for non-Vincentian purposes.

WHEREFORE, Plaintiffs respectfully request that the Court:

(a) impose a constructive trust on all assets held by the Corporation, Vincentian Housing, Vincentian Properties, Vincentian Legal, the Foundation, and SVdP CARES Inc. that were acquired through or are traceable to their use of the Society's Marks, goodwill, and affiliated status;

(b) order the Corporation, Vincentian Housing, Vincentian Properties, Vincentian Legal, the

Foundation, and SVdP CARES Inc. to render a full and complete accounting of all assets, revenues, expenditures, transfers, and liabilities from January 1, 2017, to the present;

(c) appoint a receiver or special master, if necessary, to oversee the accounting and administration of the constructive trust;

(d) enter an award of costs in favor of Plaintiffs; and

(e) grant such other and further relief as this Court deems just and proper.

Dated: September 24, 2026

NASON YEAGER GERSON
HARRIS & FUMERO, P.A.
3001 PGA Blvd., Suite 305
Palm Beach Gardens, Florida 33410
Phone: 561-686-3307
Email: gwoodfield@nasonyeager.com
aalvarez@nasonyeager.com
mcarney@nasonyeager.com
mhernandez@nasonyeager.com

By: */s/ Gary A. Woodfield*
Gary A. Woodfield, Esq.
Florida Bar No. 0563102
Alejandra S. Alvarez, Esq.
Florida Bar No. 1024860